UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE TORRES, GUADALUPE CLEMENTE, | ) | |
| LUZ WALKER, CHRISTINA BEITER, and | ) | |
| ANTONIO CARMONA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Cause No.:  4:12-cv-02373 CDP |
| | ) | |
| SIMPATICO, INC., | ) | |
| STRATUS FRANCHISING, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
JOINT MOTION TO COMPEL ARBITRATION**

**I.  INTRODUCTION**

On December 21, 2012, Plaintiffs Jose Torres, Guadalupe Clemente, Luz Walker, Christina Beiter and Antonio Carmona (collectively "Plaintiffs") filed suit against Simpatico, Inc. and Stratus Franchising, LLC, the franchisor of Stratus Building Solutions (together "Stratus"), its Chief Executive Officer Dennis Jarrett and President and Chief Operating Officer Pete Frese, and its current and various former Master Franchisees (collectively "Defendants") for civil violations under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  The named Plaintiffs are former or current Unit Franchisees of Stratus Master Franchisees and the Complaint seeks class-certification for similarly-situated Unit Franchisees.

The parties are bound by a broad arbitration agreement which encompasses the claims and parties at issue.  Moreover, the arbitration agreement contains a provision which mandates that each arbitration will be conducted on an individual, not a class-wide, basis.  When, as in this case, it is clear the entire controversy between the parties is subject to mandatory arbitration

under the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq*., the Court must dismiss the

Complaint and compel arbitration in accordance with the terms of the parties' agreement.

## II.  BACKGROUND

Stratus Building Solutions is a "green" commercial cleaning business founded in 2004 in

St. Louis, Missouri.  With a wealth of experience in the commercial cleaning and franchise

industries, the founders of Stratus quickly grew the company into one of the premier commercial

cleaning franchises in the country.[1]  The business model involves both "Master" and "Unit"

Franchises.  Master Franchisors serve as the exclusive franchisor of Stratus Solutions in their

regional market and operate and sell unit franchises within that geographic area. "Unit

Franchisees" consist of the purchasers of Stratus franchises in the geographic area covered by the

Master.  The Stratus franchise agreement is signed by and between the Unit Franchisee and the

Master Franchisor in its geographic area (the "Unit Franchise Agreement").

As part of the Unit Franchise Agreement, the Unit Franchisees receive extensive training,

"green" commercial cleaning supplies and equipment, and uniforms bearing the Stratus logo.

After completion of training, the Unit Franchisees perform commercial cleaning services on

accounts provided by the Master.  While the number of accounts given to each Unit Franchisee

depends on the amount of their initial investment,[2] Unit Franchisees are also encouraged to use

their training to generate their own accounts if they so desire.  As with any business, Unit

Franchisees that work hard and put the necessary time and effort into their business receive a

return on their investment and are rewarded with a self-sustaining and profitable franchise

business.

---

[1] In 2011 and 2012, Stratus Building Solutions was named the #1 Fastest Growing Franchise in Entrepreneur Magazine's Franchise 500 list. In 2012, Entrepreneur Magazine ranked Stratus Building Solutions to be the #1 Commercial Cleaning Franchise in the country.
[2] The Stratus system offers 16 levels of Unit Franchise program, which vary the level of investment of the Unit Franchisee depending on how much work they want to take on at the outset of the relationship.

The Unit Franchise Agreement is uniform to all Masters across the country and is attached to Plaintiffs' Motion to Compel Arbitration as "Exhibit A."  Significantly, Section XXVI of the Unit Franchise Agreement, entitled "Dispute Resolution," provides in pertinent part:

**XXVI. DISPUTE RESOLUTION**

A.  Dispute Resolution by Mediation

Franchisee and Franchisor irrevocably waive trial by jury in any action, proceeding or counterclaim, whether in law or equity. The parties have reached this Agreement in good faith and in the belief that it is mutually advantageous to them. In the same spirit of cooperation, Franchisor agrees to try to resolve any dispute without arbitration. Except as provided in Section V D and Section XVII hereof[3] or relating to controversies arising from the Marks, **either party may, at its option, submit the controversy or claim to non-binding mediation** before the Center for Public Resources ("CPR") in accordance with its National Franchise Mediation Program, or before the American Arbitration Association, if CPR or other mutually agreeable mediator, is unable to conduct the mediation. Both parties shall execute a confidentiality agreement not to disclose the fact of mediation, its procedures, information discovered or results to anyone other than its professional advisors who shall also agree to maintain such confidentiality reasonably satisfactory to us. **Upon submission, the obligation to attend mediation shall be binding on both parties. Each party will bear its own attorney fees and costs with respect to the mediation, except the fees for the mediation will be split equally**. Good faith participation in these procedures to the greatest extent reasonably possible, despite lack of cooperation by one or more of the other parties, is a precondition to maintaining any legal action to interpret or enforce this Agreement. **No party shall initiate or participate in any class action litigation claim against any other party bound hereby**.

B.  Arbitration

i.      The parties hereto agree that, except for controversies, disputes, or claims related to or based on improper use of the Marks or in connection with Sections V D or XVII, **all controversies, disputes, or claims between us and our affiliates, and our and their respective members, officers, managers, agents, and/or employees, and you** (and/or your owners, managers, guarantors, affiliates, and/or employees) arising out of or related to:

---

[3] Section VD refers to the Unit Franchisee's duty to keep information confidential and Section XVII is a non-compete provision. These are not issues in this case and therefore do not exempt Plaintiffs from the dispute resolution provisions.

1. this Agreement or any other agreement between you and us;

2. our relationship with you;

3. the validity of this Agreement or any other agreement between you and us; or

4. any Stratus System Standard;

**must be submitted for binding arbitration, on demand of either party, to the American Arbitration Association**. The arbitration proceedings will be conducted by one arbitrator and, except as this Subsection otherwise provides, according to the then current commercial arbitration rules of the American Arbitration Association. All proceedings will be conducted at a suitable location chosen by the arbitrator in or nearest the city where our principal business address is then located. **All matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.)**. Judgment upon the arbitrator's award may be entered in any court of competent jurisdiction.

ii.     The arbitrator has the right to award or include in his or her award any relief which he or she deems proper, including, without limitation, money damages (with interest on unpaid amounts from the date due), specific performance, injunctive relief, and attorneys' fees and costs, provided that the arbitrator may not declare any Mark generic or otherwise invalid or, except as expressly provided in Subsection XVII G below, award any punitive or exemplary damages against either party (we and you hereby waiving to the fullest extent permitted by law, except as expressly provided in Subsection XVII G below, any right to or claim for any punitive or exemplary damages against the other).

iii.     We and you agree to be bound by the provisions of any limitation on the period of time in which claims must be brought under applicable law or this Agreement, whichever expires earlier. We and you further agree that, in any arbitration proceeding, each must submit or file any claim which would constitute a compulsory counterclaim (as defined by Rule 13 of the Federal Rules of Civil Procedure) within the same proceeding as the claim to which it relates. Any claim which is not submitted or filed as required is forever barred. The arbitrator may not consider any settlement discussions or offers that might have been made by either you or us.

iv.     **We and you agree that arbitration will be conducted on an individual, not a class-wide, basis and that an arbitration proceeding between us and our affiliates, and our and their respective members, officers, managers, agents, and/or employees, and you (and/or your owners, managers, guarantors, affiliates, and/or employees) may not be consolidated with any other arbitration proceeding between us and any other person**.

4

v.      Despite our and your agreement to arbitrate, we and you each have the right in a proper case to seek temporary restraining orders and temporary or preliminary injunctive relief from a court of competent jurisdiction.

vi.     The provisions of this Section XXVI are intended to benefit and bind certain third party non-signatories and will continue in full force and effect subsequent to and notwithstanding this Agreement's expiration or termination.

Exhibit A at 23-24, section XXVI (emphasis added).

After Plaintiffs initiated this case, Defendants' counsel sent Plaintiffs a letter requesting mediation, or in case of refusal, demanding arbitration in accordance with the terms of the Unit Franchise Agreements. A copy of the letter is attached to Plaintiff's Motion to Compel Arbitration as "Exhibit B."  Despite Defendants' good faith attempt to comply with the dispute resolution provisions, which even included an offer to front the costs of mediation, Plaintiffs to date have failed to respond to the demand letter.   Per the express terms of the arbitration provision contained in the Unit Franchise Agreements, this Court must give effect to the intent and agreement of the parties and compel individual arbitrations for each named Plaintiff in this case.

### III.     ARGUMENT

A. **The Class Action Waiver Clauses contained in the Unit Franchise Agreements are Valid, Irrevocable, and Must Be Enforced According to their Terms**.

Plaintiffs' 124-page Complaint includes 40 exhibits and a number of superfluous and redundant allegations which lend absolutely no support to RICO liability, particularly on a class-wide scale.[4] Notwithstanding that fact, Plaintiffs seem to ignore the plain language of their Unit Franchise Agreements which expressly provide for arbitration of all disputes on an *individual* basis.  The U.S. Supreme Court and Eighth Circuit precedent is absolutely clear: such arbitration clauses are valid, irrevocable, and must be enforced according to their terms.   Accordingly,

---

[4] *See* Defendants' Motion to Dismiss, filed contemporaneously herewith. The Court need not address the motion to dismiss if it correctly determines to compel arbitration.

Defendants request that this Court dismiss this action and refer each Plaintiff to individual arbitration per the express terms of the arbitration provisions contained in the Unit Franchise Agreements.

### 1.   The Federal Arbitration Act Applies and Mandates Arbitration.

The FAA governs this dispute as the Unit Franchise Agreements unquestionably involve commerce within the meaning of the FAA.  The FAA applies to all contracts involving interstate commerce. 9 U.S.C. § 1 *et seq*.  "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010).  Section 2 of the Act states that an agreement to arbitrate "*shall* be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). The FAA establishes a strong policy favoring arbitration and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Cor*p., 460 U.S. 1, 24-25 (1983).

The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' — a term which signals Congress's intent to invoke the broadest permissible exercise of its Commerce Clause power." *Citizens Bank v. Alafabco, Inc*., 539 U.S. 52, 56 (2003).  That broad power "may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control . . . and that general practice . . . bear[s] on interstate commerce in a substantial way." *Id*. at 56-57 (internal citations and quotations omitted).

In this case, there is no question that the FAA applies to the Unit Franchise Agreements. Not only do the express terms of the contract state that the FAA is to apply (Exhibit A at 23-24,

section XXVI(B)(i)), but the economic activity in question, franchising commercial cleaning companies across the United States clearly "affects" interstate commerce as contemplated by the FAA.[5]  Accordingly, the FAA governs the Unit Franchise Agreement at issue and compels the Court to enforce the arbitration provision in accordance with its terms.

### 2.   The Unit Franchise Agreements Encompass the Parties and Claims At Issue.

The broad arbitration provision in the Unit Franchise Agreements expressly encompasses all parties and claims in this case.  By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). A court's role under the FAA, therefore, is limited to "engag[ing] in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 694-95 (8th Cir. 1994).

With respect to the scope of the arbitration agreement, the arbitration provision contained in the Unit Franchise Agreement is very broad and clearly encompasses all claims and parties to this case.  The provision applies to "all controversies, disputes, or claims . . . arising out of or related to:" (i) the Agreement, (ii) its validity, (iii) the parties' relationship, and (iv) any "Stratus System Standard" defined as "company standards, methods and procedures pertaining to the operation of the Franchisee's Franchised Business or this Franchise Agreement."  Exhibit A at 7, section V(B); 23-24, section XXVI(B)(i).  Moreover, the provision applies not only to the master franchisor and unit franchisee individually, but also to the "affiliates," "members," "officers," "managers," "agents," and/or "employees" of both parties.  Exhibit A at 24, section XXVI(B)(i).

---

[5] Plaintiffs agree with this position specifically alleging that "The enterprise affects interstate commerce in a variety of ways including the use of interstate communications in the sale of franchises and cleaning services." (Compl. ¶ 417).

Applying this language to the claims at issue, the arbitration provision plainly encompasses the RICO claims alleged.  Indeed, such claims arise from the Unit Franchise Agreement and implicate the parties' relationship as well as the Stratus company operation standards, methods and procedures.  Likewise, the named defendants in this suit are all comprised of officers, managers, agents and affiliates of Stratus or one of the named Master Franchise defendants.  Accordingly, the Unit Franchise Agreements clearly encompass the parties and claims at issue in this case.

The remaining question before this Court, therefore, is whether the class-action waiver contained in the arbitration provision requires the Court to compel arbitration for each named Plaintiff on an individual basis.  As set forth below, controlling precedent from the Eighth Circuit and U.S. Supreme Court unequivocally establishes that class-action waiver clauses do not serve to invalidate an otherwise enforceable arbitration agreement and must be enforced to compel individual arbitrations.

### 3.  Class Action Waivers in Arbitration Agreements are Binding and Enforceable

Class action waiver clauses are binding and enforceable when contained in a valid agreement to arbitrate all disputes.  Although developments in the law have been recent, a clear and unwavering principle has emerged that class action waivers are binding and enforceable on the parties to an arbitration agreement regardless of the context of the dispute.  Even prior to the U.S. Supreme Court's landmark decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), numerous federal and state courts to consider the issue, including the Eighth Circuit, have held that provisions in arbitration agreements prohibiting both parties from participating in a class action litigation, either as a representative or a class member, are not *per se* unconscionable and are otherwise enforceable, even if the plaintiff's claim is relatively small or

the claimant forfeits the right to file a class action under a statute that expressly contemplates

class litigation.[6]

### i.      Pre-*Concepcion* Caselaw

In two pre-*Concepcion* cases, the Eighth Circuit recognized the necessity of enforcing

agreements to arbitrate as written under the FAA, even when such provisions contain a waiver of

class action rights.  In *Pleasants v. American Express Co.*, 541 F.3d 853 (8th Cir. 2008), the

plaintiff filed suit on behalf of herself and a putative class alleging that American Express

violated the Truth in Lending Act by issuing pre-loaded, stored-value cards without making all

the necessary disclosures.  *Id.* at 855.  The terms and conditions accompanying each card

included an arbitration agreement with a class-action waiver clause.  After the suit was initiated,

American Express moved to compel arbitration on an individual basis as provided in the terms

and conditions of the card agreement and the FAA.  *Id.* at 856.

The plaintiff responded that under Missouri law the class-action waiver was substantively

unconscionable because claims of this type "involve small recoveries for which consumers are

unlikely to arbitrate absent the class device," and procedurally unconscionable because American

Express had superior bargaining power, presented the arbitration clause on a take-it-or-leave-it

basis, and did not send the agreement to plaintiff until after she had completed the surveys.  *Id.* at

---

[6] *See, e.g., Gay v. CreditInform*, 511 F.3d 369, 381-382 (3d Cir. 2007) (holding class action waiver to be enforceable under Section 2 of the FAA notwithstanding claim that waiver was unconscionable under state law); *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 877 (11th Cir. 2005) ("arbitration agreements precluding class action relief are valid and enforceable"); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 175 (5th Cir. 2004) (holding that provision barring arbitrator from ordering consolidation or class arbitration was enforceable because "the arbitration clause does not leave the plaintiffs without remedies or so oppress them as to rise to the level of unconscionability"); *Livingston v. Associates Finance, Inc.*, 339 F.3d 553, 559 (7th Cir. 2003) (holding that "[t]he Arbitration Agreement at issue here explicitly precludes [plaintiffs] from bringing class claims or pursuing 'class action arbitration,' so we are therefore 'obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis'"); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) (noting that plaintiff "points to no suggestion in the text, legislative history, or purpose of the [Fair Labor Standards Act] that Congress intended to confer a nonwaivable right to a class action"); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002) ("We also reject [plaintiff's] argument that the Arbitration Agreement is unenforceable as unconscionable because without the class action vehicle, she will be unable to maintain her legal representation given the small amount of her individual damages").

857.  The U.S. District Court for the Eastern District of Missouri disagreed and concluded that

the class-action waiver was not unconscionable and compelled plaintiff to submit to arbitration

on an individual basis. *Id.*

On appeal, the Eighth Circuit affirmed, recognizing that "Missouri courts have described

an unconscionable agreement as one in which "no man in his senses and not under delusion

would make, on the one hand, and as no honest and fair man would accept on the other," or one

where there is "an inequality so strong, gross, and manifest that it must be impossible to state it

to one with common sense without producing an exclamation at the inequality of it." *Id.* at 857

(quoting *Smith v. Kriska*, 113 S.W.3d 293, 298 (Mo. App. E.D. 2003)).  The Eighth Circuit

reached this conclusion in part because the arbitration clause did not limit the plaintiff's remedies

or otherwise meet the otherwise high standard of substantive or procedural unconscionability.

*See id.* at 859.

In 2009, the Eighth Circuit reaffirmed this principle in *Cicle v. Chase Bank USA*, 583

F.3d 549 (8th Cir. 2009).  In *Cicle*, the plaintiff brought a putative class action suit in Missouri

state court against Chase Bank, alleging that the company imposed illegal penalties and violated

the Missouri Merchandising Practices Act ("MMPA") when it increased the interest rate charged

on her credit card balance.  As in *Pleasants*, the cardholder agreement contained an arbitration

clause and class-action waiver provision which Chase Bank sought to enforce.  Applying

Missouri law, the U.S. District Court for the Western District of Missouri found the fee-sharing

terms and class action waiver procedurally and substantively unconscionable and denied

enforcement of the arbitration agreement. *Id.* at 553.  The Eighth Circuit reversed, stating that:

> We recognize, as we must, Chase's superior bargaining position and the lack of
> opportunity in the ordinary course for negotiation between consumer and bank in
> the application for a credit card. But there is no evidence that Chase engaged in
> "high-pressure sales tactics to coerce" Cicle into entering into the Cardmember

Agreement . . . These sorts of take-it-or-leave-it agreements between businesses and consumers are used all the time in today's business world. If they were all deemed to be unconscionable and unenforceable contracts of adhesion, or if individual negotiation were required to make them enforceable, much of commerce would screech to a halt. "Because the bulk of contracts signed in this country are form contracts—'a natural concomitant of our mass production-mass consumer society'—any rule automatically invalidating adhesion contracts would be 'completely unworkable.'"

*Id*. at 555 (citations omitted).

Of particular importance to the Eighth Circuit was the arbitration agreement's cost-sharing and cost-shifting provisions which provided that both parties are to bear their own costs unless the arbitrator determines otherwise. *See id*. at 556. These provisions ensured that the consumer would not unilaterally bear the burden and costs of arbitration and therefore prevented the clause from being substantively unconscionable.

ii.        **The U.S. Supreme Court's Decision in** *AT&T Mobility LLC v. Concepcion*

Following these decisions, the U.S. Supreme Court took an even stronger position in support of enforcing arbitration provisions as written in the landmark decision *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). In *Concepcion*, the Supreme Court reviewed an arbitration agreement found in cellular telephone contracts. The arbitration agreement had been found unconscionable by a federal district court in California and the Ninth Circuit because the agreement did not permit classwide arbitration. *Id*. at 1745. The Supreme Court reversed, holding that the FAA preempted a California judicial rule known as the "*Discover Bank* rule" that deemed unconscionable class arbitration waivers in consumer contracts.[7]    The Court recognized that the FAA preempts any state rule which "stands as an obstacle to the accomplishment and execution of [the FAA's] full purposes and objectives . . . ." *See id*. at 1753.

---

[7] In its simplest form, the *Discover Bank* rule held that a class action waiver in a consumer contract of adhesion is unconscionable when consumer claims are predictably small and the plaintiff alleges a scheme to cheat consumers. *Id*. at 1746.

As noted above, section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The question presented to the *Concepcion* Court was "whether § 2 preempts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable." *Id*. at 1746.  In determining that it does, the Court recognized that the FAA "was designed to promote arbitration," which typically has the objective of "achiev[ing] 'streamlined proceedings and expeditious results.'" *Id*. at 1747.  The Court found that the *Discover Bank* rule interfered with arbitration as contemplated by the FAA because it subjected the parties to fundamental changes in the arbitration process by permitting a consumer who has agreed to *bilateral* arbitration to demand class wide arbitration *ex post*.  *Id*. at 1750.

The Court noted that the "switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id*. at 1751. Class arbitration, unlike bilateral arbitration, "*requires* procedural formality" and due process safeguards that might entail increased judicial intervention. *See id*. at 1751-52 (emphasis in the original).  Moreover, class arbitration also "greatly increases risks to defendants" because it can impose "devastating" losses with very limited judicial review.  *Id*. at 1752.

Although the *Discover Bank* rule was characterized as arising from the "generally applicable" contract law doctrine of unconscionability, the Court noted that it was "applied in a fashion that disfavors arbitration." *Id*. at 1747.  For this reason, the state-imposed policy preference "interfere[d] with fundamental attributes of arbitration and thus create[d] a scheme inconsistent with the FAA." *Id*. at 1748.  The Court concluded that any state policy that allows any party to a consumer contract to demand classwide procedures *ex post*, in spite of an

agreement to submit all disputes to bilateral arbitration, is preempted by the FAA, even where it may be "desirable for unrelated reasons." *Id*. at 1753.

      **iii.**      **Post-*Concepcion* Caselaw**

Subsequent decisions have applied *Concepcion* to hold state-law challenges to class action waivers preempted by the FAA in a variety of contexts including consumer, employer and franchise agreements. For example, in *Green v. SuperShuttle Int'l, Inc*., 653 F.3d 766 (8th Cir. 2011), the Eighth Circuit relied on *Concepcion* to affirm a district court's order compelling individual arbitrations and enforcing class waivers contained in uniform franchise agreements.

In *SuperShuttle*, plaintiffs consisted of current or former shuttle bus drivers at the Minneapolis-St. Paul International Airport who brought suit against defendant SuperShuttle in Minnesota state court alleging that they had been misclassified as "franchisees rather than employees" in violation of the Minnesota Fair Labor Standards Act. SuperShuttle moved to compel individual arbitrations under the "Unit Franchise Agreements" signed by plaintiffs which specified the rights and obligations of the parties. *Id*. at 767. The district court granted the motion and dismissed plaintiffs' claims without prejudice. *Id*. at 768. On appeal, the plaintiffs argued that the agreements were unconscionable and therefore the class action waivers clauses were "unenforceable under Minnesota law." *Id*. at 769. The Eighth Circuit affirmed the district court's order compelling individual arbitrations, holding that:

> Like the phone customers in *Concepcion* who based their challenge to the enforceability of a class action waiver provision based upon California law, Green and the other drivers make a Minnesota-state-law-based challenge to the enforceability of the class action waivers in the UFAs. **Our reading of *Concepcion* convinces us the state-law-based challenge involved here suffers from the same flaw as the state-law-based challenge in *Concepcion* — it is preempted by the FAA**. Consequently, *Concepcion* forecloses Green's claim that the district court erred in concluding the class action waivers were enforceable.

> *Id*. at 769 (emphasis added).

Likewise in this case, *Concepcion* forecloses any Missouri state-law-based challenge to the class-action waivers contained in the Unit Franchise Agreements as such claims are inconsistent with and preempted by the FAA.[8] *SuperShuttle* demonstrates that *Concepcion* is not limited to certain types of agreements or challenges; it applies in full-force to all types of arbitration agreements including class-action waiver clauses contained in unit franchise agreements.

In the recent case *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. Jan. 7, 2013), the Eighth Circuit took an even more definitive stance by rejecting a January 2012 decision issued by the National Labor Relations Board ("NLRB") which held that the National Labor Relations Act prohibits mandatory arbitration policies that require an employee to waive his or her right to participate in a class action. *See D.R. Horton*, 357 N.L.R.B. No. 184 (Jan. 3, 2012) ("*D.R. Horton*").

In *Owen*, the plaintiff initiated an action against her former employer, alleging that her employer intentionally misclassified her and other similarly situated individuals as exempt employees in order to avoid paying proper overtime compensation under the Fair Labor Standards Act ("FLSA"). In response, the company moved to stay district court proceedings and compel arbitration in accordance with the agreement and the FAA. The U.S. District Court for the Western District of Missouri denied the motion and held that "[i]n the employment context, waivers of class arbitration are not permissible." *Owen v. Bristol Care, Inc.*, No. 11-04258-CV-FJG, 2012 WL 1192005, at *4 (W.D. Mo. Feb. 28, 2012) (citing *D.R. Horton*). In reaching this

---

[8] *See also Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 233 (3d Cir. 2012) ("'We understand the holding of *Concepcion* to be both broad and clear: a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA, irrespective of whether class arbitration is desirable for unrelated reasons.'"); *Litman v. Cellco P'ship*, 655 F.3d 225, 227 (3d Cir. 2011) (holding New Jersey law requiring the availability of classwide arbitration is inconsistent with the FAA).

14

conclusion, the district court qualified *Concepcion*, stating that the decision was "not controlling" in the labor context because compelling arbitration here would "violate[] the plain language of the FLSA," which expressly permits claimants to seek class-wide relief. *Id*. at *4-5.

On appeal, the Eighth Circuit reversed the district court's ruling and held that mandatory arbitration agreements containing class action waivers are valid and enforceable even in cases arising under the FLSA. In reaching this decision, the Court rejected the analysis of the NLRB in *D.R. Horton* and held that its decision is "consistent with more than two decades of pro-arbitration Supreme Court precedent." *Owen*, 702 F.3d at 1054. The Eighth Circuit concluded by noting that while plaintiff places "considerable weight" on the fact that *Concepcion* involved contracts for consumer goods rather than for employment, applicable Supreme Court precedent forecloses the argument that "the enforceability of class waivers is limited to the consumer context." *Id*. at 1054-55.

While the caselaw on this issue continues to evolve, the decisions set forth above stand for the unwavering principle that any state-imposed policy preference which interferes with a contracting parties' agreement to submit all disputes to bilateral arbitration is preempted by the FAA. As the FAA governs the Unit Franchise Agreements signed by each Plaintiff, and the scope of the agreement clearly encompass the parties and claims at issue in this case, this Court must enforce the dispute resolution provisions as written and compel individual arbitrations of each Plaintiff as directed under the FAA.

B. **Dismissal of this Case is Appropriate as the Entire Controversy between the Parties will be Resolved by Binding Arbitration**.

This case should be dismissed as the entire controversy between the parties will be resolved by arbitration and no purpose would be served by staying the case. The FAA provides that, when a court finds the claims raised in an action are properly referable to arbitration, the

court should stay the action until arbitration proceedings are concluded. *See* 9 U.S.C. § 3. This Court has observed, however, that "where all of the issues raised in the Complaint must be submitted to arbitration in accordance with a valid and enforceable arbitration agreement, most courts agree that dismissal of the cause, rather than imposing a stay, is appropriate." *Rothman Furniture Stores*, No. 4:10–CV–848 CDP, 2010 WL 4319707, at *2. (E.D. Mo. Oct. 22, 2010).[9]

The Eighth Circuit has also recognized the "judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *SuperShuttle*, 653 F.3d at 769-70 (citations omitted). In *SuperShuttle*, the Eighth Circuit concluded that, because the arbitrator could find that the plaintiffs, as transportation workers, were exempt from the FAA, the district court abused its discretion in dismissing the action, rather than staying the action, because "it [was] not clear all of the contested issues between the parties [would] be resolved by arbitration." *Id.* at 770.

By contrast, in this case there is no dispute that the FAA governs and no statutory provision Plaintiffs can claim exempts them from the FAA. As a result, this Court should in its discretion dismiss the case so that the parties may proceed with arbitration. *See, e.g., Rosemann v. Sigillito*, 877 F.Supp.2d 763, 777 (E.D. Mo. Jun. 26, 2012) (holding that dismissal, rather than stay, of plaintiff's RICO claim was warranted where defendants did not argue that they were exempt from FAA and the court had already concluded that plaintiffs' claims fell within scope of valid arbitration agreement); *Randazzo v. Anchen Pharmaceuticals, Inc.*, No. 4:12–CV–999 CAS, 2012 WL 5051023, *6 (E.D. Mo. Oct. 18, 2012) (holding that "the Court finds that no

---

[9] Citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992); *Emeronye v. CACI Int'l, Inc.*, 141 F.Supp.2d 82, 88 (D.D.C.2001); *Kalinski v. Robert W. Baird & Co., Inc.*, 184 F.Supp.2d 944, 946–47 (D.Neb .2002). *See also, Barker v. Golf U.S.A., Inc.*, 154 F.3d 788 (8th Cir.1998) (affirming district court's dismissal of complaint on grounds that claims were properly subject to arbitration).

purpose would be served by staying the case, and dismissal is appropriate so that the parties may proceed with arbitration").

It is clear the entire controversy between the parties will be resolved by arbitration and no purpose would be served by staying the case.  Accordingly, Defendants respectfully request that the Court dismiss this case without prejudice and compel individual arbitrations of the parties, or alternatively, stay the case pursuant to 9 U.S.C. § 3 and compel individual arbitrations of the parties.

### IV.    CONCLUSION

For the foregoing reasons, the arbitration provision and class-action waiver clause contained in Plaintiffs' Unit Franchise Agreements are valid, irrevocable, and must be enforced according to their terms.  Accordingly, Defendants respectfully request that this Court dismiss the instant action, or alternatively, stay the case pursuant to the Federal Arbitration Act, and compel individual arbitrations of the parties in accordance with the plain language of the Unit Franchise Agreements.

Respectfully submitted,

HEPLERBROOM LLC

/s/ Glenn E. Davis
Glenn E. Davis          #30308MO
J. Austin Moore          #64040MO
211 N. Broadway, Ste. 2700
St. Louis, MO 63102
(314) 241-6160
(314) 241-6116 Facsimile
Glenn.Davis@heplerbroom.com
Austin.Moore@heplerbroom.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29th day of March, 2013, a true and correct copy of the foregoing document was served via the Court's CM/ECF system upon the following counsel of record:

*Attorneys for Plaintiffs:*
Jonathan E. Fortman
LAW OFFICE OF JONATHAN E. FORTMAN, LLC
10 Strecker Road, Suite 1150
Ellisville, MO 63011
Phone: (314) 522-2312
Fax: (314) 524-1519
E-mail: jef@fortmanlaw.com


/s/ Glenn E. Davis