# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSE TORRES, GUADALUPE<br>CLEMENTE, LUZ WALKER,<br>CHRISTINA BEITER, and ANTONIO<br>CARMONA,<br><br>Individually and on behalf of all others<br>similarly situated,<br><br>    Plaintiffs,<br><br>-vs-<br><br>SIMPATICO, INC, et al.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.: 4:12-cv-02373 CDP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF JONATHAN E. FORTMAN

Comes now Jonathan E. Fortman and, after first being duly sworn upon his oath, states

and declares as follows:

1. I am over the age of eighteen (18) and competent to make this declaration.

2. I am lead-counsel on behalf of the Plaintiffs and the putative class in the above-

    referenced matter.

3. I have been an attorney for over twenty (20) years.

4. I concentrate my practice in the area of representing consumers and franchisees in

    large, complex matters. These include actions on behalf of individuals, groups, and

    class actions.

5. Prior to initiating this action, I personally conducted an extensive investigation into

    the Stratus franchise system. In addition, my staff conducted further investigation.

Page **1** of 3

6. Our investigation has involved speaking to hundreds of Unit Franchisees in the Stratus Building Solutions system, speaking to several Master Franchisees, and numerous other individuals associated with the system.

7. Based upon the investigation, and my personal knowledge, it is my opinion that the average loss among all putative class members in this system is approximately $6,100.00.

8. Based upon my investigation and personal knowledge, it is my opinion that the majority of the class members have English as a second-language and that many speak or write little to no English.

9. Over the course of my career, I have been involved in numerous arbitrations through the American Arbitration Association ("AAA")

10. Attached hereto as Exhibit 1 is a document entitled *AAA Arbitration Roadmap* promulgated by AAA.

11. I believe Exhibit 1 fairly and accurate depicts the arbitration process faces by the Plaintiffs and the associated costs.

12. Exhibit 2 contains a chart from an article entitled *Arbitration Costs and Forum Accessibility: Empirical Evidence* contained in the University of Michigan Journal of Law Reform, Vol. 41:4. The chart sets forth the results of a study by the AAA concerning the mean and median daily rates of AAA commercial arbitrators. In my opinion, those figures are accurate.

13. Attached hereto as Exhibit 3 is the executive summary of *The Costs of Arbitration* published by Public Citizen's Congress Watch in April of 2002.

14. Based upon my experience, the arbitration process for any of the Plaintiffs and members of the putative class will exceed the amount of their claim.

15. Due to the complexity of the issues, the number of witnesses involved, and the volume of documents, I would be unwilling to proceed with arbitration on behalf of any Plaintiff or member of the putative class on an individual basis unless it was done under an hourly fee agreement.

16. Based upon my experience, I do not believe any Plaintiff or member of the putative class would be able to obtain counsel who would proceed with an individual arbitration claim under any other agreement than an hourly fee agreement.

17. Based upon my personal knowledge of the financial circumstances of the Plaintiffs and hundreds of putative class members, I am of the opinion that none of them can afford the costs required to adequately proceed with an individual claim for arbitration.

FURTHER AFFIANT SAYETH NOT

_____
Jonathan E. Fortman

Subscribed and sworn to before me this 26th day of April, 2013.

KELLY M. SPANN
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: October 03, 2014
Commission Number: 10936511

_____
Kelly Marie Spann, Notary Public

Page 3 of 3

EXHIBIT 1



American Arbitration Association
*Dispute Resolution Services Worldwide*

Roadmap
**AAA Arbitration Roadmap**™

A GUIDE TO AAA ARBITRATION





© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws.

# Roadmap
# AAA Arbitration Roadmap

The American Arbitration Association's AAA Arbitration Roadmap™ shows how cases proceed under AAA administration, from beginning to end, when using the AAA's Commercial Arbitration Rules*. The AAA Arbitration Roadmap also demonstrates how parties can positively influence the arbitration process in terms of time and costs. The times portrayed here are based on a study of cases with claims between $75,000 and $500,000 and are medians, meaning that half the cases in the study took less time and half took more. For additional statistics, including timeframes for expedited and large complex cases, please refer to the appendix. Also note that actual timeframes may differ significantly based on the facts of a particular case.

## Timeline (in days)



| 1 | 15 | 60 | 112 | 217 | 218 | 267 | 297 |

| Filing and Initiation | Arbitrator Selection | Preliminary Hearing | Information Exchange & Preparation | Hearings | Post-Hearing Submissions | The Award |

## Settlement Alternatives

A full range of settlement options are available and may be appropriate prior to or during arbitration or litigation. As the parties invest time and money into the arbitration proceeding, many settlement processes lose their value. However, some processes, such as mediation, may become more viable as the parties learn about each other's positions and can more accurately measure the cost of continuing with the arbitration. Parties often choose to mediate during the Preliminary Hearing and Information Exchange phases of an arbitration proceeding.

## Arbitration Phase Details

Each phase of the arbitration process depicted above has a full-page description, including information on time- and cost-saving opportunities, under the tab with the corresponding color.

* Timeframes and cost references may vary depending on the AAA Rules applicable to a particular arbitration. The Commercial Arbitration Rules are used for illustrative purposes in this AAA Arbitration Roadmap.

Roadmap

# Filing and Initiation

The AAA commences administration of an arbitration when one party submits a demand for arbitration, a copy of the arbitration provision and the appropriate Filing Fee to the AAA. The AAA will acknowledge receipt to all parties and set a 15-day deadline for the respondent to file an answer and/or counterclaim.

## Expected Costs

Filing Fees are based on claim amounts and are paid by the party that asserts the claim or counterclaim.

## How You Can Manage Time and Cost

Be specific in your claims and answers. Clearly defining the disputed matters will make an early settlement more likely and will also focus the proceeding if it does not settle.

The parties are encouraged to inform the AAA of any unusual or complex aspects of the case that might affect the administration so that the process can be tailored to meet the parties' needs. Depending on the complexity of the case, the AAA may involve the parties in an administrative conference shortly after filing to address these matters.

Timeline (in days)

| 1 | 15 | 297 |
|---|---|---|
| Filing and Initiation | | The Award |

# Roadmap
## Arbitrator Selection

After the answer period, the AAA assists the parties in selecting an arbitrator. The AAA obtains the parties' input on the necessary qualifications and then provides a list of prospective arbitrators and their biographies for all parties to review. The parties are encouraged to agree upon an arbitrator, but if they are unable to do so the AAA will establish a deadline for each party to independently state its preferences from those candidates on the list. The AAA will then invite the most mutually agreeable arbitrator to serve on the case.

### Expected Costs

Partial refunds of Filing and Counterclaim Fees are available under many of the AAA's fee schedules. However, no refunds are given after an arbitrator has been appointed.

### How You Can Manage Time and Cost

Consider using a single arbitrator rather than a panel of three. This will have a significant effect on both the cost to the parties and the time it takes to get the matter heard.

Also review the panelists' biographies prior to selection. The biographies contain information on how much an arbitrator would charge, usually stated as an hourly or daily rate, as well as whether the arbitrator would charge for time other than that spent in hearings.

Arbitrator Selection

Preliminary Hearing

Timeline (in days)



# The Preliminary Hearing

The Preliminary Hearing is a management meeting conducted by the arbitrator. It is usually the first time the parties and the arbitrator discuss the case and is often conducted via conference call. Working with the arbitrator, the parties will identify the steps and actions needed to prepare for the evidentiary hearing and establish a schedule for the exchange of information. The parties and the arbitrator will also establish dates for the submission of final witness lists, exhibits and possibly pre-hearing briefs, depending upon the complexity of the matter. Finally, dates for the evidentiary hearing will be set. The result is a Scheduling Order that will serve as the parties' framework for hearing preparations.

The parties will also be asked to pay a deposit to cover the arbitrator's estimated fees and expenses for the scheduled hearings and anticipated study time. The due date for this deposit is usually 30 days prior to the first evidentiary hearing. Unused deposits are refunded at the conclusion of the case.

## Expected Costs

The parties typically will incur between one and ten hours of compensation charges by each arbitrator for time spent before and during the Preliminary Hearing and in preparation of the Scheduling Order.

## How You Can Manage Time and Cost

Parties can begin exchanging information at any time. There is no need to wait for the Preliminary Hearing and Scheduling Order, especially for routine and uncontroversial documents related to the dispute. This can significantly reduce the time spent in the next phase, Information Exchange and Preparation.

Parties may also stipulate and submit their own Scheduling Order to the arbitrator prior to the Preliminary Hearing; this allows the arbitrator and parties to focus only on the unresolved scheduling matters.

In cases involving three arbitrators, parties can stipulate to allow one neutral to resolve disputes which may arise during the information exchange phase; this will dramatically reduce the time and cost associated with resolving these types of disputes.

Pre-hearing briefs should serve to reduce the time spent in the evidentiary hearings and to give the arbitrator a clearer understanding of the case. Do not submit them as a matter of course unless they will accomplish these goals.

## Timeline (in days)



# Roadmap
# Information Exchange and Preparation

Working within the timeframes set forth at the Preliminary Hearing, the parties exchange information and ready their presentations. The arbitrator addresses any impasses the parties may encounter regarding the exchange of information. At the conclusion of this stage, the parties should have completed preparations for presenting evidence and arguments on the dispute. Proposed exhibits and final witness lists are often submitted at the conclusion of this phase.

## Expected Costs

The time spent by the arbitrator in this phase is proportional to the number of procedural matters needing resolution. In addition, the arbitrator will spend time reviewing the parties' pre-hearing submissions, if any.

## How You Can Manage Time and Cost

It is in this phase that the parties can have a profound effect on the overall cost and time it takes to get their dispute resolved. The parties are encouraged to cooperate on reasonable information exchange, since relying on the arbitrator to resolve procedural matters will drive up costs and prolong the parties' preparations.

Cooperative information exchange can also begin before the arbitrator is appointed, as the arbitrator's involvement is only necessary for those matters on which the parties cannot agree.

Consider having pre-arranged status checks during this phase so that the arbitrator can facilitate any impasses as they arise. However, do not hesitate to cancel a status check if things are going smoothly–there is no need to incur unnecessary arbitrator compensation charges.

Consider preparing joint exhibits and stipulations of fact in order to streamline the hearings.

Information Exchange & Preparation

Hearings

### Timeline (in days)



| 1 | 112 | 217 | 297 |

| Information Exchange & Preparation | The Award |

Roadmap
# The Hearings

Parties present evidence and testimony to the arbitrator in a format that is similar to, but less formal than, a court proceeding. The hearings conclude when the arbitrator determines that each side has had a full opportunity to present its evidence.

## Expected Costs

The arbitrator is compensated for the time spent in hearings and in reviewing evidence. The arbitrator is also reimbursed for reasonable expenses such as mileage, tolls and meals.

The Case Service Fee is assessed to each party that has a claim and is due before the first hearing.

## How You Can Manage Time and Cost

Explore alternatives to live testimony: Stipulations, affidavits, video depositions and other mechanisms where permissible can substitute for witnesses at evidentiary hearings.

At the hearings, make every effort to adhere to the timeframes established for case presentation and witness testimony in order to avoid prolonging the hearings and incurring additional time and expense.

Postponed hearings are the biggest source of delay in arbitration proceedings. If a scheduling conflict arises, consider changing the order of witnesses, shifting the hours of the hearing or using videoconferencing as ways to keep the case on schedule. If a postponement is unavoidable, alert the case participants as soon as possible so that your request for a postponement can be accommodated. Some arbitrators also charge a fee for a hearing that is cancelled on short notice; please review the arbitrator's terms of compensation on his/her biography to determine if such a charge will be assessed and under what conditions.

Information Exchange & Preparation

Hearings

### Timeline (in days)



| 1 | | 217 | 218 | | 297 |
|---|---|---|---|---|---|
| | | | Hearings | | The Award |

# Roadmap
## Post-Hearing Submissions

The arbitrator may keep the record open at the end of the hearing for a number of reasons, including: To accept additional documentary evidence that was unavailable at the hearing, to allow the parties a final opportunity to argue their positions in writing or to receive briefs on a specific issue that may have come up during the hearing.

If post-hearing submissions are necessary, parties typically file them within 30 days although this timeframe can be adjusted to meet the parties' needs.

### Expected Costs

The arbitrator is compensated for reviewing evidence and any post-hearing submissions, as well as drafting the award.

### How You Can Manage Time and Cost

Forgo or limit post-hearing briefs, especially if pre-hearing briefs were submitted. If post-hearing briefs are necessary, consider focusing on those issues that are more complex.

Make sure the discussion on post-hearing submissions clearly addresses what can and cannot be submitted, and then abide by those limitations. Submitting unexpected and unsolicited material will most-likely delay the award while the parties and arbitrator determine what to do with the new material.

Make it possible for the arbitrator to decide all matters before him or her, including any claims for interest, costs and attorneys fees, by providing specific figures for these aspects of your damages.

Post-Hearing Submissions

The Award

## Timeline (in days)

| | 218 | 267 | 297 |
|---|---|---|---|

| | Post-Hearing Submissions | The Award |
|---|---|---|

## Roadmap

## The Award

The award is due 30 days after the arbitrator closes the record and should address all claims raised in the arbitration. The award may direct one or more parties to pay another party a monetary amount or it may direct parties to take specific actions based on how the arbitrator decided the matters in the case.

Aside from addressing administrative matters unrelated to the merits of the case, the services provided by the arbitrator and the AAA are completed when the award is issued. Although parties often voluntarily comply with awards, enforcement is accomplished through a simple court proceeding.

### Allocation of Costs

In the award, the arbitrator may apportion the arbitrator's compensation and expenses and the AAA fees among the parties in any way that the arbitrator deems appropriate.

Any unused deposits are returned to the parties.

### How You Can Manage Time and Cost

Requesting the arbitrator to provide findings of fact or conclusions of law can increase costs and delay the rendering of the award.

Post-Hearing
Submissions

The Award

Timeline (in days)

1

267     297

The Award

# Appendix

The following statistics are the result of a study of business-to-business arbitration cases administered by the AAA under the AAA's Commercial Arbitration Rules and awarded in 2003. The findings reflect the number of days cases took to reach certain milestones between filing and the award.

The 25th Percentile indicates the average number of days that the first 25% of the cases studied took to reach a particular milestone. The 75th Percentile indicates the average number of days that the first 75% of the cases studied took to reach a particular milestone. The Median is the mid-point, meaning that half the cases studied took less time and half took more time to reach a particular milestone.

## Claim Size

| Up to $75,000 | Selecting Arbitrator | Information Exchange | Hearing Days | The Award |
|---|---|---|---|---|
| 25th Percentile | 33 | 104 | 1 | 126 |
| Median | 47 | 141 | 1 | 175 |
| 75th Percentile | 75 | 196 | 2 | 259 |

| $75,000 – $499,999 | Selecting Arbitrator | Information Exchange | Hearing Days | The Award |
|---|---|---|---|---|
| 25th Percentile | 43 | 161 | 1 | 216 |
| Median | 60 | 217 | 2 | 297 |
| 75th Percentile | 91 | 309 | 4 | 408 |

| $500,000 – $999,999 | Selecting Arbitrator | Information Exchange | Hearing Days | The Award |
|---|---|---|---|---|
| 25th Percentile | 46 | 182 | 2 | 273 |
| Median | 67 | 279 | 4 | 356 |
| 75th Percentile | 98 | 344 | 6 | 455 |

| $1,000,000 – $9,999,999 | Selecting Arbitrator | Information Exchange | Hearing Days | The Award |
|---|---|---|---|---|
| 25th Percentile | 50 | 215 | 3 | 309 |
| Median | 71 | 293 | 5 | 414 |
| 75th Percentile | 114 | 433 | 8 | 563 |

| $10,000,000 & Up | Selecting Arbitrator | Information Exchange | Hearing Days | The Award |
|---|---|---|---|---|
| 25th Percentile | 43 | 217 | 5 | 347 |
| Median | 63 | 315 | 8 | 474 |
| 75th Percentile | 90 | 447 | 13 | 597 |



American Arbitration Association
*Dispute Resolution Services Worldwide*

© 2007 American Arbitration Association, Inc. All rights reserved.
These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws.

# EXHIBIT 2

panels.[27] Table 2 summarizes the results. The mean and median fees of the responding arbitrators exceeded $1000 per day, and ranged as high as $5000 per day for one commercial arbitrator. Although most of the respondents were members of the AAA's commercial panel, the fees of survey respondents from the AAA's employment panel did not differ materially.

TABLE 2
ARBITRATORS' FEES IN AAA ARBITRATIONS[28]

|  | AAA Panel | Mean (per day) | Median (per day) | Range (per day) | n |
|---|---|---|---|---|---|
| Chicago, IL | Commercial | $1800 | $1698 | $750–$5000 | 60 |
| Colorado | Commercial | $1442 | $1500 | $600–$2500 | 38 |
| Hamilton County, OH | Commercial | $1468 | $1400 | $600–$2100 | 31 |
| Indiana | Commercial | $1308 | $1225 | $700–$1800 | 26 |
| VA, NC, MD, DC | Employment | $1403 | $1500 | $700–$2000 | 15 |

That arbitrators typically charge these fees does not necessarily mean that consumers and employees pay those amounts. First, for small consumer claims and employee claims under promulgated plans, the amount of fees is capped.[29] Second, some arbitrators are willing to serve pro bono, although the number of cases in which arbitrators do so in consumer and employment cases is not reported.[30]

27. Christopher R. Drahozal, *Arbitration Costs and Contingent Fee Contracts*, 59 VAND. L. REV. 729, 737–38 (2006) (summarizing findings).

28. The sources for data in the table are the following: Affidavit of Frank Zotto ¶ 13, Phillips v. Assocs. Home Equity, Case No. 01 CH 1944 (N.D. Ill. July 9, 2001) (reporting results of "random sampling of 60 arbitrators on the Commercial Panel in the Chicago, Illinois area"); Affidavit of Frank Zotto ¶ 10, Pope v. AutoNation USA, Case No. A-0001609 (Ohio Ct. Com. Pl. Aug. 15, 2001) (reporting results of "sampling of 31 arbitrators on the Commercial Panel in Hamilton County, Ohio"); Affidavit of Christine Newhall ¶ 6, Cowart v. Credit Counselors Corp., Case No. IP00-0701 (S.D. Ind. Apr. 18, 2001) (reporting results of "random sampling of 26 arbitrators on the Commercial Panel in the State of Indiana"); Affidavit of Frank Zotto ¶ 9, Calvo v. PIA Merch. Co., Case No. 2:OOcv873 (E.D. Va. Oct. 4, 2001) (reporting results of "sampling of 15 arbitrators on the Employment Panel in the Virginia, North Carolina, Washington, D.C. and Maryland area"); Affidavit of Frank Zotto ¶ 7(h), Physicians Data, Inc. v. Quest Wireless, L.L.C., Case No. OOCV631 (Colo. Dist. Ct. June 28, 2001) (reporting results of "random sampling of 38 arbitrators on the Commercial Panel in the Denver, Colorado area"). All of the affidavits are included in the CD-ROM Appendix to F. Paul Bland, Jr. et al., Consumer Arbitration Agreements: Enforceability and Other Topics (4th ed. 2004); *see also* Ting v. AT&T, 182 F. Supp. 2d 902, 934 (N.D. Cal. 2002) (citing "average daily rate of arbitrator compensation in Northern California" as $1899), *aff'd in part and rev'd in part*, 319 F.3d 1126 (9th Cir. 2003).

29. *See supra* text accompanying notes 16–18, 26.

30. The AAA has reported that it "administered 386 pro bono construction cases in 2002," *see* Am. Arbitration Ass'n, Public Service at the American Arbitration Association 8

EXHIBIT 3

# The Costs of Arbitration



**Congress Watch**
April 2002

## Acknowledgments

Legislative Counsel Jackson Williams wrote this report, based on extensive research conducted by Civil Justice Fellows Elisabeth Strawn and Bobby Zafarnia, and Legislative Assistants Andrew Benore and Morgan Lynn. Frank Clemente, Director of Public Citizen's Congress Watch, provided substantial editorial direction.

Public Citizen would also like to thank Paul Bland, John Vail, Cliff Palefsky, John Hudson, Pat Sadler and Stephanie Paul for their assistance in providing material for this report. Florence Peterson of the American Arbitration Association and Ed Anderson of the National Arbitration Forum also assisted Public Citizen by answering numerous queries about their organizations' billing practices.

## About Public Citizen

Public Citizen is a non-profit 150,000 member organization based in Washington, D.C., representing consumer interests through lobbying, litigation, research and public education. Since its founding by Ralph Nader in 1971, Public Citizen has fought for consumer rights in the marketplace, safe and secure health care, fair trade, clean and safe energy sources, and corporate and government accountability. Public Citizen has six divisions and is active in every public forum: Congress, the courts, governmental agencies and the media.



**Public Citizen's Congress Watch**
**215 Pennsylvania Avenue SE**
**Washington, D.C. 20003**

**Phone: 202-546-4996**
**Fax: 202-547-7392**
**www.citizen.org**
©2002 Public Citizen. All rights reserved.

Call Public Citizen's Publication Office, 1-800-289-3787, for additional orders. The report's publication number is B9028. Price is $50. Or consult our web site at www.citizen.org.
Major credit cards accepted. Or write to:

Members Services
Public Citizen
1600 20th Street, N.W.
Washington, D.C. 20009

## Table of Contents

Executive Summary ........................................................................................................... 1

Introduction ..................................................................................................................... 4

Section One
Exhibits and Case Studies ................................................................................................ 6
    Exhibit A: Arbitration Sticker Shock .......................................................................... 6
    Exhibit B: Justice Delayed Is... Very Expensive ..................................................... 8
    Exhibit C: An Arbitration Tripple Play ....................................................................... 16
    Exhibit D: Arbitration Costs Are Not Chicken Feed ................................................. 19
    Exhibit E: We *Can* Make Arbitration Cheap, But We *Won't* .......................... 21
    Exhibit F: Arbitration Crap Shoot............................................................................... 25
    Exhibit G: From Each According to His Ability... .................................................. 27
    Exhibit H: Market of Choice? ..................................................................................... 29
    Exhibit I: Justice? I Can Get It for You Wholesale ................................................. 32
    Exhibit J: "...real benefits to the enforcement of arbitration provisions..." .............. 34
    Exhibit K: Going to Court ........................................................................................... 38

Section Two
Arbitration Costs and Court Costs Compared ................................................................ 40
    Arbitration Costs: Four Hypothetical Cases............................................................... 42
    Chart: Court Costs versus Arbitration Costs............................................................... 43
    How Arbitration Costs Add Up ................................................................................... 52

Section Three
Analysis: A Closer Look at Arbitration Costs ................................................................ 52
    I. Impact of Arbitration Costs on the Ability to Vindicate Rights ........................... 52
    II. Economics of Arbitration Costs ............................................................................. 59
    III. Consequences of Arbitration Costs....................................................................... 77

Conclusion........................................................................................................................ 80

Endnotes............................................................................................................................ 81

# Executive Summary

"The speed and affordability of arbitration are perhaps its most discussed benefits…" [1]

-U.S. Chamber of Commerce

"Arbitration can save parties 70-80% of the cost of litigating these cases." [2]

-Ed Anderson, National Arbitration Forum

"Arbitration still costs less than litigation" [3]

-*The Wall Street Journal*

"Less costly" [4]

-AT&T Broadband

"Cost-effective" [5]

-Sen. Jeff Sessions

"Usually it is quicker, less expensive, and more informal than litigation. Not always…" [6]

-Florence Peterson, American Arbitration Association

Remarkably, although the claim is frequently made that arbitration costs less than litigation, no research has ever been undertaken to substantiate it. No interest group has commissioned a study. No Member of Congress has asked for a General Accounting Office report.

Writing in 1992 about court-annexed ADR [7], Stanford law professor Deborah Hensler cautioned, "Whether alternative dispute resolution procedures will reduce private litigation costs is still an open question. Court-administered arbitration has shown mixed results in this regard." Recently she repeated her caveat about a paucity of empirical research, explaining, "Because public support for ADR is so frequently justified on cost savings grounds, program administrators especially fear cost-benefit assessments." [8]

Here, Public Citizen presents the first comprehensive collection of information on arbitration costs. We find:

- The cost to a plaintiff of initiating an arbitration is almost always higher than the cost of instituting a lawsuit. Our comparison of court fees to the fees charged by the three primary arbitration provider organizations demonstrates that *forum costs*—the costs charged by the tribunal that will decide the dispute—can be up to five thousand percent higher in arbitration than in court litigation. These costs have a deterrent effect, often preventing a claimant from even filing a case.

Dear Walter,

The Janitorial Agency recently provided your company, HL&D
Management Group Incorp, with an opportunity for sample service @
Crown of India.

A Sample Service was scheduled for Sunday 7/22/12 @ 9:30 AM.

Part of your responsibility as a business person is to be accountable,
available and dependable. You were aware of the arrangements that
were made on your behalf with YOUR perspective client; however, you
did not come on the appointed day and time, and you didn't let anyone
know at TJASC that you wouldn't be there so that a replacement could
be provided to the company.

We have provided excessive training, going above and beyond
contractual requirements.

You have chosen not to hold your business practices, and professionalism
to the highest standard. You have failed walk through training and yourself
as the owner of your own business.

At this time, services have stopped due to your decision to skip this
opportunity.

I realize that things happen that are beyond our control; however, by "no
showing", you have jeopardized the integrity of not only your business
but TJASC's as well.

The status of your account has been changed to DEFAULT. Please
contact me as soon as possible.

Respectfully,


Denise Shattuck
The Janitorial Agency Services Corp.
Tel: 1.517.323.1958
Fax: 1.517.579.9931
contracts@janitorialagency.com

Public Citizen's survey of costs finds that, for example, the forum fee for a $60,000 employment discrimination claim in the Circuit Court of Cook County, Illinois is $221. The forum fees for the same claim before the National Arbitration Forum (NAF) would be $10,925, 4,943% higher. An $80,000 consumer claim brought in Cook County would cost $221, versus $11,625 at NAF, a 5,260% difference. These high costs are not restricted to NAF; for the same $80,000 claim, the American Arbitration Association (AAA) would charge the plaintiff up to $6,650, and Judicial Arbitration and Mediation Services (JAMS) would charge up to $7,950, amounting to a 3,009% and 3,597% difference in cost, respectively.

- Arbitration costs are high under a pre-dispute arbitration clause because there is no price competition among providers. Companies that want to use arbitration costs as a barrier, to prevent consumers and others from asserting their legal rights, have no incentive to arrange low-cost arbitration services. Instead, it is to their advantage to seek out the highest-cost arbitration providers. While experience has shown that many lawyers are willing to serve as arbitrators for nominal fees, the market provides no mechanism to match volunteer arbitrators to cases in which they are needed the most.

  The mandatory arbitration clause's negative effect on price competition can be seen in AAA's handling of insurance claim arbitration. From 1989 to 2000, in cases submitted to AAA on a *post-dispute* basis, AAA charged each party a total of only $300 for administration and arbitrator fees. But cases arising under a *pre-dispute clause* were governed by AAA's Commercial Rules, with much higher filing fees and regular hourly arbitrator fees. For example, a health insurer's denial of coverage for a bone marrow transplant, submitted post-dispute under the Insurance Claims Procedures, would cost the consumer $300. But for a case governed by a pre-dispute clause, AAA charged a much higher fee. Tammy Sharpton, who arbitrated such a case in 1997, was charged $5,290.23, *eighteen times* what AAA would have charged had it been competing with other arbitration providers and the courts.

- Arbitration costs will probably always be higher than court costs in any event, because the expenses of a private legal system are so substantial. The same support personnel that expedite cases at a courthouse, such as file clerks and court administrators, are also necessary to manage arbitration cases. But because arbitration provider organizations handle fewer cases over larger geographic areas, the economy of scale in a court clerk's office cannot be achieved, increasing the administrative cost per case. Thus, while it costs the Clerk of the Circuit Court of Cook County an average of $44.20 to administer a case, AAA's administrative cost per case averages $340.63, about 700 percent more.

- Arbitration saddles claimants with a plethora of extra fees that they would not be charged if they went to court. For example, the National Arbitration Forum charges $75 to issue a subpoena. A lawsuit litigant can obtain a subpoena form for free from the court, oftentimes downloading it off the Internet. NAF also charges fees for discovery requests ($150) and continuances ($100), occurrences so ubiquitous in litigation that they must be viewed as inevitable. The American Arbitration Association (AAA) charges extra fees for use of a hearing room.

- Taking a case to arbitration does not guarantee that a consumer or employee will stay out of court, making arbitration still more costly. First, a plaintiff bound by a *one-way arbitration clause*, the most common type, may be forced to go to court to litigate the same issues that are being decided in the arbitration. This is because the other party to the clause has retained its right to sue in court. Second, if crucial documents or testimony must come from a third party, court litigation is necessary to enforce subpoenas. In fact, due to a quirk in arbitration law, sometimes two different federal lawsuits are necessary to enforce one subpoena. Third, if a plaintiff wins a case in arbitration but the defendant refuses to honor the award, the plaintiff must ask a judge to enforce the award.

- The costs of arbitration are so high that even some businesses that choose to include arbitration clauses in contracts with consumers and farmers have refused to pay the fees.

- High arbitration costs can also be used to bludgeon an adversary. For instance, the party being sued can file a motion to dismiss or a motion for summary judgment. The claimant must then advance additional funds to pay the arbitrator to decide the motion, even if the motion has no merit. The defendant can also refuse to provide discovery information, in which case the claimant must advance funds to the arbitrator to decide the discovery dispute. In one case, for which we have reproduced copies of the arbitration bills, the claimant was unable to pay and had to abandon the case.

- The oft-cited benefits that arbitration can offer in exchange for higher fees will seldom benefit consumer litigants. Not only is there is no evidence that arbitration reduces the overall *transaction costs of litigation* (e.g. witness fees, attorney fees, discovery costs), but nobody has expounded a coherent theory to explain how arbitration *could* reduce such costs except in a few categories of cases. Indeed, Public Citizen's careful examination of the cost savings claim demonstrates that in the vast majority of cases, arbitration will necessarily *increase* the transaction costs of litigation.